# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STACIE FOSTER,

    Plaintiff,

v.

ANTHONY DELUCA; CITY OF
CHICAGO HEIGHTS; and DAN PROFT,

    Defendants.

No. 04 C 5220
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. Background

On May 16, 2003, approximately one month after Defendant Mayor Anthony DeLuca ("DeLuca"), a Republican, became mayor of the City of Chicago Heights and within a few weeks of service as mayor, Plaintiff Stacie Foster ("Stacie"), a Democrat, was terminated from her job as health insurance coordinator. As a result, on August 6, 2004, Stacie filed suit against Defendants DeLuca, Dan Proft ("Proft"), DeLuca's chief of staff, and the City of Chicago Heights ("City") for violation of her right to freedom of association, Count I, and for retaliation under Title VII and 42 U.S.C. §1983, Count II.[1] Stacie was the first of five plaintiffs and former City employees to allege that DeLuca and Proft terminated them unlawfully.[2] Defendants now

---

[1] Plaintiff's original complaint actually only named DeLuca and the City as Defendants. However, Plaintiff's amended complaint, filed in April 2009, added Proft as a defendant.

[2] Four other former City employees filed suit against DeLuca and Proft alleging that they were terminated unlawfully because they supported DeLuca's opponents in the previous election. First, on August 26, 2004, Robert Boehl filed a civil rights action against DeLuca and the City. In that case, Judge Pallmeyer granted Defendants' motion for summary judgment on February 16, 2007, on the basis that the evidence did not establish that DeLuca knew whom Boehl supported in the election and that Defendants had a legitimate, non-political reason for Boehl's termination. Second, on September 12, 2004, Doug Foster, Stacie's husband, filed a civil rights action against

move to dismiss Plaintiff's amended complaint for failure to state a claim and to strike Plaintiff's claim for punitive damages.[3] For the following reasons, Defendants' motion to dismiss is granted.

## II. Statement of Relevant Facts

Stacie began working for the City in 1997. Since 2000, she worked as the City's health insurance coordinator for then Mayor Angelo Ciambrone. Her job included managing the City's health insurance program, organizing a filing system, and resolving problems between insurance companies and employees. Ciambrone served as Mayor from 1995 through April of 2003. When Ciambrone decided not to run for re-election, Stacie worked on the mayoral campaign of Paulnita Ress, previously Ciambrone's administrative assistant, in 2002 and 2003.

On May 16, 2003, approximately one month after DeLuca was elected mayor and within a few weeks of serving as mayor, Proft terminated Stacie's employment, which she believes DeLuca asked him to do because DeLuca, as mayor, had final policymaking authority. Stacie alleges Proft told her that her job was being eliminated because of a new federal law relating to

---

DeLuca and the City. His suit is still pending based on questions of fact not present in this case. Third, on November 12, 2004, Betty Halperin filed a civil rights suit against the same Defendants. On August 10, 2006, Judge Aspen granted Defendants' motion for summary judgment, refusing to infer political bias, and instead concluding that Defendants had a legitimate, non-political reason for their decision to fire Halperin. Fourth, on April 22, 2005, Maria Zerante filed a similar complaint against the same Defendants. On April 22, 2005, Judge Gottschall granted Defendants' motion for summary judgment, stating that Zerante failed to prove that the Defendants knew of her alleged political activities and it was undisputed that the City was in financial trouble.

[3] Plaintiff's complaint was originally dismissed for failure to state a claim. Plaintiff thereafter filed a motion for leave to file an amended complaint, which was summarily denied. Plaintiff appealed that denial; the Seventh Circuit reversed because the district court judge who denied her motion gave no reason for doing so. The case was reassigned to me in February 2009, and in March I granted Plaintiff leave to file an amended complaint.

health information of employees. Stacie believes this was not a valid basis for her firing based on information Stacie received from the U.S. Department of Health and Human Services because, according to Stacie, her job did not violate the federal privacy rule. When Stacie asked Proft if she could be transferred to another position, her request was denied. Approximately one week after Stacie's termination, Lisa Pelegrino began working for the City, assuming several of Stacie's former duties, including communicating with representatives of Long Claims Services, the City's third party administrator, regarding insurance claims.

Stacie believes that the real reason she was fired was because of her support for a Democratic mayor and mayoral candidate. She believes that DeLuca had an "evil intent to violate her constitutional right to freedom of association." Her claim is based on the following: (1) on May 7, 2003, Doug Foster ("Doug"), Stacie's husband and a previous City employee until that date, met with DeLuca and Proft; (2) Proft and DeLuca told Doug that the administration was looking to head in a new direction and wanted its people "in here" and Doug to leave his job; and (3) DeLuca and Proft each stated at the meeting that the Republican organization wanted DeLuca's administration to "chop off heads and hold them up for trophies." Furthermore, Stacie alleges that it was a policy and custom of the City to deny employees their constitutional right to freedom of association based on the firing of other employees believed to support Democratic candidates.

Stacie asserts that the two named Defendants are each personally liable under 42 U.S.C. § 1983 because they either participated in the decision to terminate her or the decision occurred with their knowledge and consent. She further alleges retaliation under Title VII and § 1983 based on Defendants' decision to terminate her within few weeks of taking office because she

supported their opponents in the election.  As a result, Stacie alleges she lost substantial earnings, other job-related benefits, and suffered emotional distress.  She seeks compensatory, pecuniary, and punitive damages.

Another Judge of this Court dismissed the complaint.  Plaintiff appealed in 2008 to the Seventh Circuit, which reversed not on the merits but based solely on the district court's failure to explain its decision to deny Plaintiff's motion to file an amended complaint.  Leave was granted and now this is Plaintiff's third attempt to plead a viable complaint.  Defendants now move to dismiss for failure to state a claim.

### III. Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.  In ruling on such a motion, I accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in Plaintiff's favor.  *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).  To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, "the pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  Plaintiff must do more than plead facts that are consistent with Defendants' liability because that only shows the possibility, not the plausibility, of her entitlement to relief.  *Iqbal* 129 S. Ct. at 1949.  Thus, a complaint will not suffice if it makes "naked assertions devoid of further factual enhancement."  *Id.* (quotation and citation omitted).

**IV. Discussion**

    **A. Count I: Violation of the Right to Freedom of Association**

Section 1983 provides that any person who, under the color of law, causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." *Johnson v. City of Chi.*, 711 F. Supp. 1465, 1467 (1989); 42 U.S.C. § 1983. To succeed on her § 1983 claim, Plaintiff must allege that (1) she was deprived of a constitutional right (2) as a result of an official municipal policy or custom (3) which was the proximate cause of her injury. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). Here, the constitutional right that was allegedly violated is Plaintiff's First Amendment freedom of association.

"It is well established that firing . . . government employees based on political motivation violates the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65 (1990); *Elrod v. Burns*, 427 U.S. 347, 367 (1976)). To successfully state a First Amendment claim, Plaintiff must specifically plead that her political orientation was "a substantial or motivating factor in the employment decision." *Id*. Furthermore, to survive a motion made pursuant to 12(b)(6), Plaintiff must plead under § 1983 that her constitutional rights were violated by an express policy, a widespread practice, or a person with final policymaking authority. *McGreal v. Ostrov*, 368 F.3d 657, 684 (7th Cir. 2004). Under the pleading standard, as identified in *Twombly* and *Iqbal*, Plaintiff has failed to adequately plead that she was terminated based on her political

5

orientation, let alone that her termination was, as she alleges, a widespread practice of DeLuca and the City of Chicago Heights.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556 (2007). Here, Plaintiff's entire pleading can be boiled down to three allegations: (1) soon after taking office, Defendants fired Plaintiff and seven other people, (2) over a week before Plaintiff was fired, Defendants made a tasteless statement to another individual (Plaintiff's husband) while he was being terminated, (3) and at least several of Plaintiff's duties were assumed by someone else after she was fired, thus belying Defendants' asserted reason for terminating her.

Plaintiff cites to the termination of seven other employees shortly after DeLuca took office as illustrative of the "widespread practice of DeLuca and the City of firing people believed to have supported his Democratic opponent." However, in three other cases, Judges Aspen, Pallmeyer, and Gottschall each entered summary judgment in Defendants' favor, each deciding that no reasonable finder of fact could conclude that Defendants had knowledge of the political orientation of three of those employees. In a fourth case, another employee awaits trial on factual matters not present in this case. *See, supra,* note 2. Plaintiff has, at most, pled facts sufficient to sustain an allegation that DeLuca has generated a number of disgruntled ex-employees.

Moreover, the complete absence of specific allegations regarding Defendants' knowledge of Plaintiff's political leanings does not help Plaintiff's pleading rise above the level of "naked assertions" admonished in *Iqbal*. *Iqbal*, 129 S. Ct. at 1949 (2009) (quoting *Twombly*). Plaintiff further claims that the reason given for her termination was untrue, and that someone else is

currently employed by the City in the same capacity in which she used to be employed. However, she does not provide specific factual allegations sufficient to allow me to make a reasonable inference that her termination was plausibly a politically motivated dismissal.

Although Plaintiff's pleading makes liberal use of the *Twombly* "reasonable inference" terminology, her citation of Defendants' remarks to a third party—which bear no relation to her termination—and her unsubstantiated allusion to the "widespread practice of DeLuca and the City of firing people believed to have supported his Democratic opponent" are unconvincing, especially in light of the relatively rich discovery and case history afforded to Plaintiff. *See*, *supra*, note 2.

**B. Count II: Title VII and § 1983 Retaliation**

In Count II, Plaintiff alleges: "Defendants violated Title VII and § 1983 when they retaliated against Plaintiff by terminating her in May 2003, within a few weeks of taking office, after she had supported their opponents in the primary and general City elections of February and April 2003, respectively." While unclear, it appears that this count attempts to state a claim for retaliation under both Title VII and § 1983. With regard to the claim made under Title VII, it is undisputed that Plaintiff has not alleged an underlying Title VII violation. Further, Plaintiff has failed to plead that she engaged in any activity whatsoever that was protected by Title VII, let alone that she was terminated as a result of engaging in such activity. Even if I were to assume Plaintiff was terminated for her political leanings, this does not come within the purview of Title VII.

If instead, Plaintiff pursues a claim of retaliation under § 1983 because Defendants terminated her for her support of DeLuca's opponent, this merely restates the allegations contained in Count I and is dismissed for the same reasons.

**C. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted.[4]

**ENTER:**

_____
James B. Zagel
United States District Judge

DATE: September 28, 2009

---

[4] As I have granted the motion to dismiss, I need not address Defendants' objection to Plaintiff's claim for punitive damages.